JOYJSTES, J.
The first question- to be decided in this case is that which arises upon the demurrer to the declaration. The ground of demurrer assigned in the petition is, that the innuendoes give a meaning to the letter upon which the action is founded which its language does not authorize. But we need not trouble ourselves with this question. Where the writing on its face relates to the plaintiff, and the words are libellous in themselves, the innuendo is unnecessary and may be rejected as surplusage. 4 Rob. Prac. 733, -and cases cited. T think this is a case of that sort.
It is not necessary to constitute a libel that the writing should contain the imputation of an offence which may be indicted and punished. It is sufficient if the language tends to injure the reputation of the party, to throw contumely, or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule *345 or ^contempt. And the court will understand the words of the writing- as they would generally he understood by the rest of mankind, or as we ourselves would understand them out of court: that is to say, according to their plain and ordinary import. These are familiar and well settled principles. Vide 1 Am. Dead. Cases 132 136; Ibid 152-161.
Thus construed, the letter contains at least two express charges against the plaintiff of a libellous character. He is charged with killing wild hogs belonging to two other persons, which he is advised to pay for. We cannot fail to understand by this that the hogs were killed under such circumstances as made the killing improper and unlawful. He is also charged with pursuing a course of conduct towards the defendant with no other motive than to run him to costs, which plainly imports that the conduct was improper and unjust, and that the plaintiff was actuated by a wicked and malicious motive.
But it is not necessary to make a writing libellous that the imputations shpuld be made in the form of positive assertion. It is equally so if they are expressed in the form of insinuation, provided the meaning is plain. 2 Saund. PI. & Evid. 900-902;. 1 Am. Read. Cases 156; Cooke on Defamation, 4-5. The plaintiff is advised to “quit lying” and to “stop swearing to lies,” which plainly imports, according to the, common acceptation pf language, that he has been telling lies and swearing to lies. He is further told, if he wants to know how he stands in the community, to apply to Green Conner, who told the defendant that he tore down an advertisement about the plaintiff, in which the,defendant supposes, as Green Conner told him, that the plaintiff was charged with being a hog thief. What is this but an imputation that the plaintiff has been posted as a hog thief, or, at least, that the defendant had been told so by Green Conner? *The letter is, on its face, addressed to Dawson, so that. every imputation in it applies plainly , to him.
The Circuit court, • therefore, did not err in overruling the demurrer.
The next question is, whether .the evidence set forth in the first bill of exceptions was properly admitted. After proving that the defendant delivered the letter to a witness, folded up and sealed, and requested him to deliver it to the plaintiff, which he did; and after the letter had been read to the jury, the plaintiff introduced another witness, who testified that the defendant stated to him, in the presence of other persons, that he had sent a letter to the plaintiff; that he had got Thomas B. Woolwine to write the letter for him, and that he (the defendant) had signed his own name to it, and kept a copy; and that the defendant, at the same time, stated to the witness the contents of the letter, but without prodtic-ing it, or a copy of it. Evidence was introduced tending to show that the letter thus referred to was the one on which the action is founded.
This evidence was, of course, offered to prove the publication of the libel, and the question is whether it was admissible for that purpose. To constitute a publication it is not necessary that the contents of the writing should be made known to the_ public generally. It is enough, it is said, if they are made known to a single person. Holroyd, J., 6 Eng. C. L. R. 375. They were made known to Woolwine, who wrote the letter at the request of the defendant. The defendant adopted and sanctioned what Woolwine wrote at his instance and request, and if the defendant’s signature to the letter was necessary to render the act complete, there was evidence from which the jury might have inferred that the signature was attached in the presence of Woolwine. My impression is, that • there was a sufficient publication to *Woolwine stated in this evidence to maintain the action. The subsequent repetition of the contents of the letter was undoubtedly a publication. In the case de libellis famosis, 5 Rep. 125, it is said that publication may be “verbis aut cantilenis, as when the libel is maliciously repeated or sung in the presence-of others.” In Iamb’s case, 9 Rep. 59, it is said, that if one who has. read a libel, or heard it read, repeats, it, or any part of it, in the hearing of others, that is a publication.- In Bac. Abr. Eibel B. this is laid down as undisputed law. The court did not err, therefore, in receiving the evidence.
After the plaintiff had given evidence as to the writing and publication of the libel, and before the defendant had ■ introduced any evidence, the plaintiff offered- to introduce ' evidence to prove that before the publication of the libel, his general character for truth and honesty had been good. The defendant objected to the admission of this evidence ; but the court overruled the objection: and the admissibility of this ■evidence constitutes the only remaining question in the case.
This question has given rise to much difference of opinion in England and in this country. In England the question appears to be unsettled. The only cases I find were cases at Nisi Prius; and they are conflicting. In King v. Waring & ux., 5 Esp. R. 13, Eord Alvanley allowed the plaintiff to give evidence of her general character, before any evidence had been introduced bjr the defendant. The decision was put on the ground that the general character of the plaintiff was, in some respects, in issue, and that such evidence ought to be received in answer to the slander. Starkie expresses the opinion that the plaintiff must rely upon the presumption which the law makes in favor of the goodness of his character; and that he cannot, therefore, give evidence to prove his character to be good until it *has been assailed by evidence on the part of the defendant. 2 Stark. Ev. 218. The case which is usually cited as showing that in England the plaintiff is *346 not allowed to give evidence in chief to prove his general character, is the decision of Chief Justice Abbott in Cornwall v. Richardson, Ry. & Mood. 305 ( 21 Eng. C. L. R. 446). But that decision appears to have been placed upon the doctrine that the defendant is not at liberty to introduce evidence to impeach the general character of the plaintiff; a doctrine which was condemned by this court in McNutt v. Young, 8 Leigh 542.
It is not necessary to make any further reference to the English cases, as they afford no material aid in the solution of the question.
In this country the cases are conflicting. Many of them are collected in 1 Am. Bead. Cases 207. Cases are there cited from Connecticut and South Carolina, in which the right of the plaintiff to give evidence in chief as to his general character is maintained. To these may be added a recent case in North Carolina, in which the same doctrine was held upon full consideration. Sample v. Wynn, Busbee Law R. 319. These cases proceed upon the ground that, from the nature of the case, the general character of the plaintiff is involved in’the issue, or more properly in the trial of the-issue, in every such action. Greenleaf says, that in actions of slander (and the same reason applies to libel), it is well settled, that the plaintiff’s general character is involved in the issue, and that, therefore, evidence showing it to be good or bad, and consequently of much or little value; may be offered on either side to affect the amount of damages.” 2 Greenl. Evid. $ 275.
This precise question has never been decided by this court. But in McNutt v. Young, 8 Leigh 542, it was held that though, strictly speaking, .the general character *of the plaintiff was not within the issues, yet it was involved in the trial of the issues, because it was necessary to be considered with reference to the quantum of damages. Hence a man of bad character is not entitled to recover as much as a man of good character. Upon this ground it was held that the defendant was entitled, in mitigation of damages, to give evidence of the general bad character of the plaintiff in reference to the subject matter of the slander. The reasoning of the judges in that case, and the decision in the subsequent case of Lincoln v. Chrisman, 10 Leigh 338, seem to show that the defendant will not be confined to the character of the plaintiff in reference to the particular subject of the slander.
It being thus important to the decision of the case that the jury should hear evidence as to the character of the plaintiff, either generally or in reference to the particular subject matter of the slander or libel, can any good reason be assigned 'why it should depend on the option of the defendant whether they shall hear such evidence or not? Such a one-sided rule would not be fair and equal as between the parties, would often defeat the justice .of the case, and might operate great hardship upon a-plaintiff who is unknown to the jury. The defendant would not open the door by an attack on his character, and he would not be allowed to sustain it by evidence in chief. It does not appear to me to be a satisfactory answer to say, that the plaintiff ought to stand upon the presumption which the law makes, in the absence of evidence to the contrary, that his character is good. Why should the plaintiff be compelled to rely upon such a general presumption, when he offers to prove that the presumption, in his particular case, is in accordance with the fact? And what right has the defendant to complain, since the evidence is only offered to establish with more *certainty what the law would presume to be true in the absence of all evidence? I am not aware of any case in which a mere presumption that a fact exists, which is liable to be rebutted, is held to preclude a party in whose favor the presumption is made from introducing evidence to prove that the fact is really so. And besides, the character of the plaintiff is always impeached when the slander ■ or libel imputes crime or moral delinquency, and the charge moreover may proceed from a person whose known position and character give it weight with the jury.
I think, therefore, that the evidence offered by the plaintiff in this case was properly received. Such evidence was admitted in Bincoln v. Chrisman, above cited, and there was no intimation by any of the judges of this court that it was not admissible. Indeed the language used by Judge Parker in that case, and by Judge Brocken-brough and Judge Tucker in McNutt v. Young, seems strongly to indicate that they would have held such evidence admissible, if the question had been before them.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Joynes, J.
Judgment affirmed.